NIMMONS, Judge.
Greynolds Park Manor, Inc. (“Grey-nolds”), appeals the June 18, 1985 final order of the Department of Health and Rehabilitative Services (“HRS”), denying its request for an interim rate increase. We affirm.
Greynolds operates a skilled nursing facility with a fiscal year which runs from June 1 through May 31. Pursuant to an agreement between HRS and Greynolds to *165 participate in Florida’s Medical Assistance Program for Medicaid Reimbursement (“Program”), Greynolds is required to submit a “uniform cost report” within ninety (90) days after the close of the fiscal year. HRS then audits the cost report and sets the provider’s prospective reimbursement rate.
On September 27, 1979, Greynolds submitted its cost report. HRS issued its final audit of the cost report on September 23, 1982. As a result of the audit, Greynolds’ reimbursement rate was drastically reduced and Greynolds was requested by HRS to return an overpayment of $288,024. This overpayment resulted from Greynolds’ inclusion of Medicare costs in its 1979 cost report. Such costs are not reimbursed by the Program because they are reimbursed separately through another source.
On November 2, 1982, Greynolds requested by letter an interim rate increase for its fiscal year 1980. An interim rate change is sometimes allowed by the Program as an adjustment to a provider’s prospective reimbursement rate when unexpected events occur during the fiscal year which were not contemplated in setting the provider’s reimbursement rate predicated on the previous year’s cost. Greynolds applied for the rate change because it suffered a substantial decrease in its revenue in fiscal year 1980 as a result of a staph infection at its facility.
On November 15, 1982, before any agency action was taken on its interim rate request, Greynolds requested a formal hearing pursuant to Section 120.57(1), Florida Statutes. Greynolds’ petition for a hearing disputed the audit adjustments and further sought a determination that HRS should be estopped from denying an interim rate increase.
On January 12, 1983, HRS denied Grey-nolds’ request for an interim rate change. The request was denied on the ground that “interim rates will not be granted for a closed cost reporting period.” However, HRS failed to inform Greynolds of its right to request a hearing at that time.
Greynolds’ Section 120.57 hearing was held on March 22, 1983. The hearing officer recommended that Greynolds be ordered to repay HRS for excess Medicaid reimbursements. However, the hearing officer declined to address the merits of the issue of whether HRS should be estopped from denying Greynolds’ interim rate change request. The hearing officer’s recommended order was adopted by the Secretary on August 16, 1983 (“Greynolds I”). The Secretary’s order was affirmed by this court in Greynolds Park Manor, Inc. v. Department of Health and Rehabilitative Services, 454 So.2d 29 (Fla. 1st DCA 1984).
Subsequent thereto, on June 7, 1983, Greynolds renewed its request for an interim rate change for fiscal year 1980. This request was denied on October 12, 1983, on the following ground as stated by HRS in a letter to counsel for Greynolds:
To grant an interim rate for a closed cost reporting period would be the same as making a retroactive payment to a nursing home whose costs exceed annual payment. Retroactive payments such as this are specifically prohibited by Section 10C-7.48(6)(i), Florida Administrative Code, which was in effect during the cost reporting period in question.[1]
Thereafter, Greynolds filed a timely request for a Section 120.57 hearing. The issue addressed at this hearing was whether a provider may apply for an interim rate change when the request is filed after the close of the cost reporting period. The hearing officer agreed with the interpreta *166 tion advanced by HRS of Rule 10C-7.-48(6)(i) and concluded that the rule barred Greynolds’ rate change request because it was made after the end of the cost reporting period. The Secretary adopted the hearing officer’s recommended order on June 18, 1985. It is from this final order that Greynolds appeals.
Greynolds maintains that the Secretary erred in concluding that Greynolds was prohibited from filing a request after the close of a cost reporting period because HRS was bound by a prior contrary ruling by the Secretary in Greynolds I. Grey-nolds argues that the Secretary in Grey-nolds I ruled that Greynolds’ request was timely and that there was no prohibition against filing a request after the close of a cost reporting period. In support of its position, Greynolds relies upon the following language in the Secretary’s Greynolds I order:
[HRS] has cited no rule or statute that governs the time frame in which requests for interim rate changes must be made, and in the absence of such citation, it is concluded that no prohibition against filing a request after the close of a cost reporting period exists. Moreover, the record discloses that [Grey-nolds] has done so on at least one occasion prior to this case. This being so, the undersigned concludes that [Greynolds] may now file a request for an interim rate increase for fiscal year 1980.
Greynolds asserts that this ruling was binding on the Secretary in the subsequent hearing held on the merits of Greynolds’ interim rate change request.
However, a close examination of the Secretary’s order reveals that the language relied upon by the appellant was mere dicta.[2] It cannot be regarded as a final determination so as to have precluded the hearing officer from readdressing the timeliness of the rate change request when the claim was heard on the merits. At the time Greynolds petitioned the agency for a formal hearing on November 15, 1982, its interim rate request was still pending. Moreover, Greynolds’ petition only raised the issue of whether HRS should be es-topped from denying its interim rate request; it did not incorporate the rate request previously served on HRS on November 2, 1982. In fact, because the hearing officer did not have before him an interim rate request, he declined to consider the merits of the estoppel issue. The hearing officer held that it would be premature to consider the estoppel issue and that the issue should be raised in conjunction with the rate request.
The fact that the Secretary’s order in Greynolds I did not constitute final agency action as to the merits of appellant’s interim rate request was previously recognized by this court in Greynolds Park Manor, Inc., supra:
Although HRS did thereafter act on the rate request prior to the formal hearing, and the parties alluded to the estoppel issue at the hearing, the circumstances presented did not require a determination on the merits thereof. Rather, the agency could permissibly await presentation of the issue at a hearing for which proper application is made.
454 So.2d at 30.
Furthermore, as recognized by the hearing officer in Greynolds I, Greynolds had never received a clear point of entry for administrative review of its interim rate request. When Greynolds’ request was denied by HRS on January 12, 1983, HRS failed to inform Greynolds of its right to request a hearing and the time limits for doing so. The hearing officer held that because of HRS’ error, Greynolds should still be entitled to challenge the denial of its interim rate request through a Section 120.57 hearing. Thus, the Secretary’s order in Greynolds I simply afforded Grey-nolds a point of entry for administrative review of the rate request.
*167 It is apparent that the Secretary in Grey-nolds I did not have before him Greynolds’ interim rate request and therefore could not pass on its propriety. Therefore, notwithstanding any dicta to the contrary, the Secretary’s order in Greynolds I did not constitute final agency action as to the issue of the timeliness of Greynolds’ interim rate request and thus was not binding on the Secretary in the subsequent hearing held on the merits of that issue.
We have considered the remaining issues raised by Greynolds and find them to be without merit.
AFFIRMED.
WENTWORTH J., and DAVEY, KEVIN (Associate Judge), concur.

. Rule 10C-7.48(6)(i), Florida Administrative Code, provides in pertinent part:
Retroactive payment shall not be made to nursing homes whose costs exceed annual payment.

. This conclusion is supported by this court’s prior decision in Greynolds Park Manor, Inc. v. Department of Health and Rehabilitative Services, supra, in which the court noted that in the adopted recommended order the hearing officer merely suggested that appellant should still be entitled to challenge the denial of its interim rate request.